JOHN COSTELLO v. CHARLES TEN EYCK.

*Torts—Bailment—Sunday contract—Pleading.*

1. It is the duty of an agister who takes horses for pasture to know their condition as to health; and if he has knowledge of the prevalence of a distemper among them of a contagious character, and fails to inform a customer of the fact, whose horse takes the distemper from contact with the diseased horses, in consequence of which the animal dies, the owner is entitled to recover its value in an action on the case, notwithstanding the contract for such pasturage is void because entered into on Sunday.

2. How. Stat. § 2015, avoids Sunday contracts, which cannot be ratified upon a subsequent week-day; citing *Adams v. Hamell*, 2 Doug. 73; *Tucker v. Mowrey*, 12 Mich. 378; *Winfield v. Dodge*, 45 Id. 355; *Brazee v. Bryant*, 50 Id. 141; *Railroad Co. v. Chappell*, 56 Id. 194.

3. Declarations in justices' courts are to be liberally construed, and, though informal, when they fairly apprise the defendant of the claim made against him, may be held sufficient; citing *Wilcox v. Railroad Co.*, 43 Mich. 584; *Fletcher v. Bradford*, 45 Id. 349.

4. A declaration in a plea of trespass on the case, claiming $100 damages, and, while informal, evidently intended by the pleader to claim damages for defendant's wrongful act in permitting plaintiff's horse to be turned into a pasture, with knowledge of the existence of disease among the other horses therein, is held a declaration in case, and not *assumpsit.*

Error to Wayne. (Hosmer, J.) Argued May 20, 1891. Decided June 5, 1891.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*George H. Prentis,* for appellant.

*Brennan & Donnelly,* for plaintiff.

LONG, J. This action was commenced in justice's court against defendant and one William Ten Eyck, where plaintiff had judgment. The cause was removed to the circuit court for the county of Wayne and there tried before a jury, which rendered a verdict against the defendant Charles Ten Eyck, for $75. The court directed the jury that no verdict could be taken against the other defendant. Judgment was subsequently rendered against the defendant Charles Ten Eyck in favor of the plaintiff, the other defendant having judgment for costs against the plaintiff. Defendant Charles Ten Eyck brings the case to this Court by writ of error.

The declaration was filed in justice's court, and sets up that—

"John Costello, plaintiff, complains of William Ten Eyck and Charles Ten Eyck, the defendants herein, in a plea of trespass on the case:

"For that, whereas, the plaintiff, on, to wit, on or about the 1st day of October, 1888, at the township of Dearborn, in said county, delivered to the defendants a certain horse, being of a dark sorrel, of the plaintiff (at the time of delivery of said horse to defendants said horse was well and sound), to pasture at the rate of three

dollars per month, and the defendants well knew at the time of the plaintiff's delivery of the said horse for pasturing that there was disease among the horses in the pasture in which the plaintiff's horse was left by said defendants; that the said horse thereafter, about five weeks, by reason of such disease among the horses and pasturage, and by the defendants not supplying water for said horse, the said horse died, to the damage of the plaintiff one hundred dollars, and therefore he brings suit."

The plaintiff on the trial introduced evidence tending to show that defendant, Charles Ten Eyck, was in the business of taking in horses to pasture for hire, and that on September 30, 1888, plaintiff, by his brother, sent the mare in question to defendant to pasture, under an agreement to pay therefor three dollars per month. The mare remained there about three weeks, when plaintiff learned of the fact that the horses in defendant's pasture were afflicted with distemper. Testimony was also given tending to show that during the months of August and September of that year the defendant's pasture was infected with disease; that certain persons having horses therein took them out by reason of this disease; and that defendant had knowledge that these horses were taken out by reason of being diseased before the time plaintiff's horse was turned into pasture, and that he gave plaintiff no notice of that fact, but permitted his horse to remain there, with full knowledge of the diseased condition of the pasture and the horses therein. It also appears that this disease was highly infectious.

Defendant introduced testimony tending to show that he had no knowledge that any distemper existed there in the pasture, or among the horses there at pasture.

Several defenses were interposed on the trial of the cause in the court below, and several questions are presented to this Court as reasons why the judgment and verdict of the court below should be reversed. It appears

that the horse was put into the pasture, and the contract made for its keeping, on September 30, 1888, which was upon Sunday. It is contended by defendant that plaintiff could not recover in this action, because it was a Sunday contract for the keeping of the horse; and that, inasmuch as the contract is void, no recovery could be had. Counsel cites in support of this proposition many cases from this Court and the courts of other states holding Sunday contracts void.

The statutes of this State (How. Stat. § 2015) provide that—

"No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business, or work, or be present at any dancing, or at any public diversion, show, or entertainment, or take part in any sport, game, or play, on the first day of the week. The foregoing provisions shall not apply to works of necessity and charity, nor to the making of mutual promises of marriage, nor to the solemnization of marriages."

The penalty for the violation of this statute is by fine. This statute has been passed upon many times by this Court, and it has been held that contracts made upon Sunday are absolutely void, and that such contracts could not be ratified upon a week-day thereafter. *Adams v. Hamell*, 2 Doug. 73; *Tucker v. Mowrey*, 12 Mich. 378; *Winfield v. Dodge*, 45 Id. 355; *Brazee v. Bryant*, 50 Id. 141; *Saginaw, etc., R. R. Co. v. Chappell*, 56 Id. 194.

Under this statute and these decisions, and the decisions of courts in other states passing upon similar statutes, cited by defendant's counsel in his brief, it is contended that the court should have directed the jury to return a verdict in favor of the defendant for the reasons:-

1. That the action is *assumpsit*.
2. That, whether it is in *assumpsit* or is an action on the case, it cannot be sustained without the aid of the

contract, and, that contract being void, there is nothing left upon which to base the action.

The action, as before stated, was commenced in justice's court. The declaration was evidently drawn by the plaintiff without the aid of counsel, but it was evidently intended by the pleader to claim damages in the action for the wrong in permitting his horse to be turned into pasture, the defendant knowing of the existence of disease there. It is a plea in trespass on the case, and claims damages in the sum of $100, and we think the declaration is one in trespass on the case, and not in *assumpsit*. Declarations in justices' courts are to be liberally construed, and, though informal, where they fairly apprise the defendant of the claim made against him, may be held sufficient. *Fletcher v. Bradford,* 45 Mich. 349; *Wilcox v. Railroad Co.*, 43 Id. 584.

It does not necessarily follow that an action cannot be maintained because the contract for the pasture, being made on Sunday, was void. The defendant took the horse into his possession, and it continued in his possession for the three weeks following. At the time of its being turned into pasture, and during the subsequent time that it remained there, the defendant knew that it was subject to the disease then prevalent among the other horses in the pasture. Having taken the horse into his possession, though under a void contract, he yet owed a duty to the plaintiff to exercise some degree of care over it. He was bound to give the plaintiff notice of the disease, so that the plaintiff might have removed the property, or have taken some precaution himself, or to have refused to put the horse in the pasture there.

Generally no person can be compelled to become a depositary without his own consent; but there are cases where a person may be subject to the duties and liabilities of a depositary without any intention on his part to

enter into any contract, or to assume any liability in regard to the property in question. The finder of property of a person unknown is not bound to interfere with it. He may pass by, if he please, and has then no responsibility in relation to it; but if he takes it into his possession he becomes at once bound, without any actual contract, and perhaps without any actual intention to bind himself, to the owner of the property, for its safe-keeping and return. *Smith v. Railroad Co.*, 27 N. H. 86.

In *Brazee v. Bryant*, 50 Mich. 136, plaintiff sued to recover for money paid by him to defendant for a horse, on the claim that the horse was not what the defendant had recommended it to be. On the trial the parties were permitted to go into evidence respecting the warranty of the soundness of the horse, and whether the warranty was broken. The contract of purchase appears to have been made on Sunday. The plaintiff was permitted to recover in that case because of the Sunday contract. The defendant attempted to recoup damages, and the court instructed the jury that, there being no contract in the case, there was nothing to rescind, and nothing to constitute a basis ·for recoupment. It was said by Mr. Justice COOLEY in that case:

"If plaintiff, while the horse was in his hands, misused it, or failed to observe any duty implied from his assuming the position of bailee, the defendant will be entitled to his proper remedy. But no right of action for such misconduct or neglect could be made use of as a defense to an action for money had and received."

It is claimed that the court was in error in directing the verdict in favor of the plaintiff against one of the defendants alone; that, if any recovery could be had in the case, it should have been a joint judgment.

86 MICH—23.

against the two; but, as we have said, the action is not in *assumpsit*, but in tort, for wrongfully taking the horse to pasture, and permitting it to remain there, knowing that the pasture and the other horses therein were diseased, and giving no notice to the plaintiff of that fact. It being a tort, the court very properly held that a recovery could be had against the person committing the wrong, and was not in error in directing that no recovery could be had against William Ten Eyck.

It is further contended by defendant's counsel that there was no competent evidence that the horse died by disease, and that, even if she did die of this distemper, there ·was no competent evidence tending to show that she contracted it in defendant's pasture. There was some competent evidence tending to show these facts, and it is not for this Court to say what weight shall be given to the evidence. That is a question solely in the province of the jury.

Error is also assigned upon the following portion of the charge of the court to the jury:

"It is unquestionably the duty of Mr. Ten Eyck to know as to the condition of the horses that he had in pasture. No doubt he did know. He testified that he examined into their condition, and that, knowing the condition of the horses—If you find in this case from the testimony that horses in the pasture with the defendant Charles Ten Eyck were afflicted with the distemper, immediately before or at the time the plaintiff's horse was brought there and was received by the defendant, and that the disease was likely to be or might be communicated to the plaintiff's horse, and if you find that the disease was there at the time that the plaintiff's horse was taken to Charles Ten Eyck's, and that the defendant Charles Ten Eyck knew, or ought to have known, that the disease was prevalent in his pasture, then it was his duty to have informed the plaintiff's agent of that fact; and, if the plaintiff's horse took the distemper

at the defendant's place, from contact with diseased horses or by infection, and in consequence thereof died, plaintiff is entitled to recover what, under the judgment of the jury, under the evidence in the case, the horse was fairly worth."

We find no error in this ruling. Under the circumstances of the case the law was properly stated by the court, and we think, under the testimony of the defendant, that he did know that there was disease among the horses in his pasture at the time the plaintiff's horse was turned in there. He testified that there was a common disease among the colts in the pasture there, called a "distemper," all along during the summer before, and that he took from the pasture one of the horses, put it into the barn, and cared for it until it got well.

There is some question also as to whether the court properly instructed the jury that they might find that William Ten Eyck acted as agent of Charles Ten Eyck in relation to this pasture. There was some evidence in the case tending to show this fact, and the court was not in error in leaving the question to be determined by the jury.

There is also error assigned upon the ruling of the court in admitting testimony as to the value of the horse. We find no error in these rulings, and shall not discuss the other questions raised.

The judgment of the court below must be affirmed, with costs.

The other Justices concurred.